**In re NKI, INC. d/b/a "Kaepa" Tin 57–1–41151, Debtor.**

No. 98–06851–B.

United States Bankruptcy Court, D. South Carolina, Columbia Division.

Nov. 23, 1998.

George B. Cauthen, Nelson, Mullins, Riley & Scarborough, Columbia, SC, for debtor.

John T. Stack, Office of U.S. Trustee, Columbia, SC, for U.S. trustee.

### ORDER ALLOWING INTERIM COMPENSATION

WM. THURMOND BISHOP, Bankruptcy Judge.

This proceeding comes before the court on November 4, 1998, on the application of Nelson Mullins Riley & Scarborough, L.L.P. (NMRS) for interim compensation as general counsel for the chapter 11 debtor NKI, Inc. 11 U.S.C. § 331. NMRS filed the application on October 13, 1998. Notice of the application has been provided to all parties in interest in the case. The United States Trustee (the UST) filed a timely objection to the application on October 28, 1998.

The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and Local Civil Rule 83.X.01 DSC. This matter is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

The application shows that five attorneys and two paralegals at NMRS worked on this case during the period covered by the application. The application indicates that both business and bankruptcy attorneys have

worked on the case for NMRS. The UST's objection relates only to the hourly rates charged by two bankruptcy attorneys based in NMRS's Columbia, South Carolina office and one bankruptcy attorney in the firm's Atlanta, Georgia office. The rates billed for bankruptcy attorneys by NMRS are:

| | |
|---|---|
| Richard B. Herzog, Jr. | $250/hr. (Atlanta, GA) |
| George B. Cauthen | $205/hr. (Columbia, SC) |
| Frank B.B. Knowlton | $195/hr. (Columbia, SC) |
| Michael T. Reynolds | $165/hr. (Atlanta, GA) |

Title 11 U.S.C. § 330(a)(3)(A) requires the court to consider several factors when awarding "reasonable" compensation to bankruptcy professionals.[1] Among the factors which the court must consider is "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than case under this title."[2] The UST argues that the hourly rates sought by some of the applicant's attorneys in this case exceed this amount. The UST has recommended that the court award NMRS compensation based upon the following rates for bankruptcy counsel:

| | |
|---|---|
| Richard B. Herzog, Jr. | $250/hr. (Atlanta, GA)[3] |
| George B. Cauthen | $175/hr. (Columbia, SC) |
| Frank B.B. Knowlton | $150/hr. (Columbia, SC) |
| Michael T. Reynolds | $125/hr. (Atlanta, GA) |

If the court granted compensation at the hourly rates suggested by the UST, NMRS's compensation would be reduced by $6,773.50. This reduction would lower the total amount of fees and expenses requested from $49,542.91 to $42,769.41.

Paragraph 10 of the fee application states that the hourly rates sought by all of the NMRS professionals in this case are "their normal hourly rates." This paragraph also states that "this District does not entertain [the applicant's] normal, customary rates." NMRS is correct in asserting that the rates billed to the debtor for work by the applicant's bankruptcy attorneys are higher than the rates ordinarily awarded in this court for bankruptcy services by comparably skilled professionals doing similar work. Generally, the "top rate" approved in this court on a regular basis for an experienced chapter 11 debtor's attorney certified as a specialist in bankruptcy is $175 per hour.

The issue presented by the parties to this proceeding could be best stated as:

Are the hourly rates sought by NMRS bankruptcy attorneys reasonable based on the customary compensation charged by comparably-skilled practioners in non-title 11 cases?[4]

The court cannot properly apply the "comparably skilled practitioners" factor in § 330(a)(3)(E) without considering what rates are supported in the marketplace for comparably skilled practitioners. If the rates charged by NMRS's bankruptcy attorneys exceed those which comparably skilled attorneys command for similar non-title 11 work, the court should reduce the hourly rates to those which are supported by the marketplace. A bankruptcy professional should not be permitted to charge a bankruptcy estate a rate higher than that supported in a non-title 11 context. Stated differently, a bankruptcy estate should not have

1. Further reference to 11 U.S.C. § 101 et. seq., will be by section number only.

2. Section 330(a)(3)(E) codifies one of the twelve factors adopted by the Fifth Circuit in the seminal attorney's fee case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). 3 Collier on Bankruptcy, § 330.04[6], 15 ed rev. (1998). The Fourth Circuit adopted the Johnson-factors test in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.1978).

3. The UST conceded that this court recognizes that due to market differences the hourly rates of bankruptcy attorneys practicing in Atlanta, Georgia, Charlotte, North Carolina, and Los Angeles, California are generally higher than the rates of bankruptcy professionals based in this district. The UST did not object to the hourly rate charged by Mr. Herzog who is based in Atlanta. The UST conceded that Mr. Herzog regularly charges this race in his Atlanta-based bankruptcy practice. The UST, however did object to the hourly rate charged by Mr. Reynolds ($165), also based in Atlanta, on the basis that the rate seemed excessive for an Atlanta bankruptcy associated admitted to the bar for three years. The court notes that the UST has consistently recommended to this court that out-of-state professionals practicing in this court receive their normal hourly rates as approved by the bankruptcy courts in their home districts.

4. Many other factors can be involved in a determination of reasonable compensation under § 330(a) (e.g., the necessity of the services rendered, the benefit to the estate, the results obtained, etc.). These issues were not raised by the UST in this case.

to pay more than a non-title 11 client would pay for similar work by a comparably-skilled practitioner.[5]

■ The court in its "marketplace" analysis must also take into account the multi-tiered rate structure which many attorneys have. Many attorneys, including those at NMRS, charge different clients different hourly rates. This tiered rate structure results from such factors as competition for clients among law firms, a client's willingness to pay a particular rate, the complexity of the matter being handled, and the risk to the professional of non-payment. The UST argues and this court agrees that a bankruptcy estate should not pay the highest rate in a multi-tiered rate structure unless those factors which support the rate in a non-title 11 context are also present in the title 11 case.[6]

NMRS submitted a memorandum of law on the issue of hourly rates. NMRS, with the consent of the UST, also submitted affidavits by several bankruptcy practitioners in this district well known to the court and to the UST regarding the reasonableness of the $205 hourly rate charged by Mr. Cauthen. Only one of these affidavits other than that of Mr. Cauthen states that the affiant charges an amount equal to or exceeding the $205 hourly rate for similar non-title 11 work. The remainder of the affidavits either do not state what rates the affiants charge or state that the affiants charge a rate less than $205 per hour.[7]

■ The court concludes that NMRS has proved by a preponderance of the evidence that attorneys comparably skilled to Mr. Cauthen receive the $205 hourly rate for similar work in a non-title 11 context. The court also concludes that NMRS has partially met its burden of proof as to the hourly rates for Messrs. Knowlton and Reynolds. Accordingly, the rate for Mr. Knowlton shall be reduced to $175, and the rate for Mr. Reynolds shall be reduced to $145.

Based on the representations of parties in interest, and after careful consideration of the application, this court finds that $44,147.50 is reasonable compensation to be paid at this time for the services rendered by NMRS up to and including September 25, 1998, and that $2,776.91 is reasonable reimbursement for costs incurred by NMRS to this date.

The amount is authorized by the court on the representations made to the court in the fee applications and attachments filed with this court and may be reduced or increased if such representations prove incorrect prior to the closing of the case.

The debtor is authorized to issue payment in the total sum of $46,924.41 to NMRS. Any pre-petition retainer paid to the firm may be applied toward the payment of this amount.

AND IT IS SO ORDERED.

---

5. NMRS argues that the United States District Court for the District of South Carolina regularly approves hourly rates for non-bankruptcy attorneys which exceed those charged by the firm in this case. The firm contends that if an attorney with comparable skills in another specialty receives a particular hourly rate, then a bankruptcy attorney having comparable skills (as measured by years of experience and equivalent skills) should be able to charge this rate for bankruptcy work. The court understands this proposition. But if this proposition is totally correct, similarly skilled attorneys would charge the same hourly rate regardless of their area of practice and location. The marketplace indicates otherwise.

6. The following example illustrates the problem posed by a multi-tiered rate structure. Problem: If a bankruptcy attorney has 100 clients, and charges 95 clients $175 per hour and 5 clients $200 per hour for the same work, what rate should a bankruptcy estate pay? Answer: the same rate that a client would be charged in a non-title 11 context if the factors which justify the rate in a non-title 11 context are present in the bankruptcy case.

7. Presumably, the marketplace for these comparably-skilled attorneys does not support a $205 hourly rate for similar non-title 11 work. Several of the affidavits focus on either the affiant's opinion of Mr. Cauthen's bankruptcy expertise or the affiant's apparent dissatisfaction with the top hourly rate approved by this court. The court accords little weight to what these attorneys think Mr. Cauthen should receive or what they hope he will receive.